UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
KANSAS CITY DIVISION

| | | |
|---|---|---|
| ELIZABETH MARTIN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:23-cv-00566-SRB |
| | ) | |
| v. | ) | Removed from Jackson County Circuit |
| | ) | Court, Case No. 2316-CV16402 |
| | ) | |
| UNION HOME MORTGAGE CORP., | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES

Defendant Union Home Mortgage Corp. ("UHM") answers the Petition of Plaintiff Elizabeth Martin ("Plaintiff") as follows:

## NATURE OF THE CASE

1. This action is brought to remedy discrimination on the basis of sex and/or pregnancy in the terms, conditions, and privileges of employment, all in violation of the Missouri Human Rights Act, Mo. Rev. Stat. § 213.010, *et seq*., ("MHRA") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. as amended by the Pregnancy Discrimination Act of 1978 ("Title VII").

**ANSWER:** UHM admits that Plaintiff claims violations of Title VII and the MHRA, but denies engaging in any unlawful conduct and denies the remaining allegations in Paragraph 1.

2. The claims hereinafter alleged seek declaratory and injunctive relief and compensatory and punitive damages for Defendant's intentional discrimination on the basis of sex and/or pregnancy under the MHRA and Title VII.

**ANSWER:** UHM admits that Plaintiff seeks various types of relief and damages, but denies engaging in any unlawful conduct, denies that Plaintiff is entitled to any relief or damages, and denies the remaining allegations in Paragraph 2.

## JURISDICTION AND VENUE

3. Defendant's unlawful employment practices complained of herein occurred in Jackson County, Missouri, and accordingly, jurisdiction and venue are proper in this Court.

**ANSWER:** UHM does not contest jurisdiction or venue, although UHM has exercised its right to remove the case to federal court. UHM denies engaging in any unlawful conduct and denies the remaining allegations in Paragraph 3.

4. On or about August 2, 2022, Plaintiff filed her Charge of Discrimination detailing the allegations included herein with the Equal Employment Opportunity Commission ("EEOC"), which was thereafter dually filed with the Missouri Commission on Human Rights ("MCHR"). A copy of Plaintiff's Charge of Discrimination is attached hereto as Exhibit A.

**ANSWER:** UHM admits that Plaintiff filed an EEOC charge that appeared to be dually filed with the MCHR and a copy of Plaintiff's charge is attached to the Petition as Exhibit A. UHM lacks knowledge or information sufficient to form a belief as to when Plaintiff filed her charge and therefore denies same. UHM denies any remaining allegations in Paragraph 4.

5. Plaintiff received her Notice of Right to Sue from the EEOC on or about March 22, 2023, and requested her Notice of Right to Sue from the MCHR on May 8, 2023. Plaintiff has fully complied with all jurisdictional prerequisites to jurisdiction of this Court under the EEOC and will do so MHRA upon receipt of her Notice of Right to Sue. A copy of Plaintiff's EEOC Notice of Right to Sue is attached hereto as Exhibit B.

**ANSWER:** UHM lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 5 and therefore denies same.

## PARTIES

6. Plaintiff is and at all times relevant to the allegations in this Petition has been a female resident and citizen of the State of Missouri.

**ANSWER:** On information and belief, UHM admits the allegations in Paragraph 6.

7. Defendant is a business entity incorporated under the laws of the State of Ohio, and at all relevant times it was authorized to conduct business in the State of Missouri. Defendant is an "employer" within the meaning of the MHRA and Title VII.

**ANSWER:** UHM admits the allegations in Paragraph 7.

8. All of the acts, conduct, and omissions of Defendant were performed by its agents, representatives, and employees acting while in the course and scope of their employment.

**ANSWER:** UHM lacks knowledge or information sufficient to form an answer to what "acts, conduct, and omissions of Defendant" Plaintiff is referring to and therefore denies same.

## FACTS

9. Plaintiff is female.

**ANSWER:** UHM admits the allegations in Paragraph 9.

10. Plaintiff was employed as Loan Officer with Defendant from March 1, 2021, until the termination of her employment on August 11, 2022.

**ANSWER:** UHM admits that it employed Plaintiff from March 1, 2021 until August 11, 2022, but denies the remaining allegations in Paragraph 10.

11. Plaintiff's record of employment with UHM was exemplary. At no time did she receive feedback from those to whom she reported that her performance was deficient in any way. Plaintiff was not coached or placed on a performance improvement plan of any type, for any reason. Plaintiff received high praise in each of her performance reviews 6 months and 12 months after my employment with UHM began. At the time of the termination of her employment, Plaintiff

was less than one month away from her scheduled NMLS SAFE Act exam for the purpose of her promotion to Licensed Loan Officer.

**ANSWER:** UHM admits that Plaintiff was not placed on a performance improvement plan and that it is unaware of any serious deficiencies with Plaintiff's performance. UHM denies the remaining allegations in Paragraph 11.

12. Plaintiff has a history with pregnancy loss, and for that reason she informed the Licensed Loan Originator with whom she worked closely, Robert Hastings, of her pregnancy in January 2022. At the beginning of February, Plaintiff informed Area Sales Manager Josh Carr of her pregnancy during a meeting at which they discussed a raise as part of her annual review. In June Plaintiff informed UHM human resources representatives of her pregnancy and did not immediately receive confirmation from them that she expected to be away from work for the birth and care of her child. Accordingly, Plaintiff informed Human Resources Manager Mary Udivich and LOA Team Lead Chantel Pittman of her pregnancy shortly thereafter. Plaintiff was instructed to contact human resources representatives 45 days prior to her expected date of delivery.

**ANSWER:** UHM admits that Carr was aware of Plaintiff's pregnancy. UHM admits Plaintiff contacted certain Human Resources representatives. UHM lacks knowledge or information sufficient to form an answer to whether Hastings was aware of Plaintiff's pregnancy or whether Plaintiff had a history of pregnancy loss and therefore denies same. Plaintiff denies the remaining allegations in Paragraph 12.

13. In June 2022, Plaintiff learned that Robert Hastings was considering a departure from UHM. In the following weeks Plaintiff prepared for her absence from work for the birth of and care for her child scheduled for on or about August 10.

**ANSWER:** UHM admits that in or about June 2022, Plaintiff learned that Hastings was considering leaving UHM. UHM lacks knowledge or information sufficient to form an answer to the remaining allegations in Paragraph 13 and therefore denies same.

14. In July Plaintiff contacted human resources representatives because she was informed by her physician, Dr. Julie Johnson, that her child may arrive early. They provided her with documentation related to her expected absence on July 12 with instructions to return completed forms on or before July 22. Plaintiff returned completed documentation related to her expected absence on July 21. Plaintiff's induction was then scheduled for August 17.

**ANSWER:** UHM admits Plaintiff interacted with its Human Resources representatives in regard to a potential leave. UHM lacks knowledge or information sufficient to form an answer to the remaining allegations in Paragraph 14, such as what Plaintiff's physician informed her of, and therefore denies same.

15. On Friday, August 5, Plaintiff informed human resources representatives of her scheduled induction. Because she received no response, Plaintiff contacted human resources representatives again on August 8 and August 10, again with no response. On August 5 Plaintiff also spoke with Josh Carr about Mr. Hastings's potential departure and her concern about the handling of the loans assigned to her in her absence for maternity leave. Plaintiff explained to Mr. Carr that she wanted to be certain that the clients for whom she was working would be serviced appropriately in her absence. In response, Mr. Carr assured her that regardless of whether Mr. Hastings remained with UHM, he would be able to place her in a position with UHM at one of the offices in Lee's Summit, Missouri.

**ANSWER:** UHM admits UHM admits Plaintiff spoke to Carr about how clients' needs would be met during her absence. UHM denies that Carr assured Plaintiff that he could place her

in a position in Lee's Summit, Missouri regardless of whether Hastings remained with the company. UHM also denies Carr had the authority to make such an assurance. UHM admits Plaintiff contacted certain Human Resources representatives. UHM lacks knowledge or information sufficient to form an answer to the remaining allegations in Paragraph 15 and therefore denies same.

16. On Monday, August 8, Robert Hastings informed Plaintiff that he was leaving UHM and that he would be joined by Loan Officer Assistant Kelly Haislip at UMB.

**ANSWER:** UHM admits the allegations in Paragraph 16.

17. On Wednesday, August 10, Plaintiff attended a regularly scheduled appointment with Dr. Johnson. Her pregnancy was high risk, and her physician determined that she would need to be placed on bed rest immediately and remain on bed rest until the scheduled induction on August 17.

**ANSWER:** UHM lacks knowledge or information sufficient to form an answer to the allegations in Paragraph 17 and therefore denies same.

18. Plaintiff spoke with Josh Carr at 9 a.m. on August 11 and explained that she had been instructed by her physician to remain on bed rest. Plaintiff informed Human Resources Generalist Jessica Ankuda of her physician's instructions on August 11 at approximately 9:30 a.m. Dr. Johnson sent notice of his instructions to remain on bed rest via fax at the same time. Plaintiff sent a copy of his instructions to Mr. Carr by email the same morning.

**ANSWER:** UHM admits that Plaintiff submitted correspondence from her medical provider regarding her restrictions, but denies the remaining allegations in Paragraph 18.

19. Before Plaintiff informed Jessica Ankuda of her expected period of bed rest in advance of the birth of her child, Plaintiff received a phone call from Josh Carr at approximately

9 a.m. He said "I don't know what is going on. Give me until the afternoon to figure it all out and I will call you back." At 11 am on August 11, Plaintiff received a call from Ms. Ankuda and Loan Officer Susan Stevenson. Ms. Stevenson explained that Mr. Hastings was no longer with UHM and that there "are no open positions within the company." Plaintiff was stunned to learn that she was being terminated and told them that it was difficult to process their decision. Plaintiff told Ms. Ankuda and Ms. Stevenson that she had been placed on bed rest the day before during her regularly scheduled appointment with her physician, that notice had been sent to UHM of these instructions by fax and email, and that she was scheduled to be induced on August 17. Plaintiff again told them that she could not believe what they were telling her. Plaintiff explained that Mr. Carr had expressed confidence that she would continue my employment with UHM.

**ANSWER:** UHM admits that on August 11, 2022, she was notified that because Hastings had left the company that her position supporting Hastings was consequently eliminated. UHM admits Plaintiff was displeased about this. UHM denies the remaining allegations in Paragraph 19.

20. Susan Stevenson apologized and repeated her claim that there "are no open positions within the company." She then asked Plaintiff whether she knew if Mr. Hastings intended to take anyone with him, and Plaintiff said that she believed he was taking one person. Ms. Stevenson apologized for the "timing of this" and offered to write a letter of recommendation on Plaintiff's behalf. Jessica Ankuda then explained that Plaintiff's benefits would terminate at the end of the month and that thereafter she would have 60 days to elect to obtain COBRA coverage. They both then apologized again, and Ms. Stevenson instructed Plaintiff to reach out to her if she had questions.

DMS 26773460.1

7

Case 4:23-cv-00566-SRB   Document 8   Filed 08/17/23   Page 7 of 15

**ANSWER:** UHM admits that it did not have an open position for Plaintiff, that Plaintiff's benefits were scheduled to terminate at the end of August 2022, and that she had 60 days to elect COBRA coverage. UHM admits it regrets having to let employees go as a result of a loan officer's departure. UHM denies the remaining allegations in Paragraph 20.

21. After the termination of her employment, Plaintiff learned that a male Loan Officer Assistant had been retained by UHM following the departure of Licensed Loan Originator Robert Hastings.

**ANSWER:** UHM lacks knowledge or information sufficient to form an answer to what Plaintiff allegedly learned and therefore denies same. Answering further, UHM states that no Loan Officer Assistant who supported Hastings remained employed with the company.

## COUNT I – VIOLATION OF THE MHRA – SEX DISCRIMINATION

22. Plaintiff hereby incorporates each preceding paragraph as though fully set forth herein.

**ANSWER:** UHM reincorporates its responses to Paragraphs 1 through 21 as if fully set forth herein.

23. Plaintiff is female. She was pregnant at the time of the termination of her employment, a condition about which Defendant and its agents were aware.

**ANSWER:** UHM admits that Plaintiff is female, that she was pregnant at the time of her termination, and that some of UHM's employees were aware of her pregnancy. UHM denies that the decision makers regarding her termination were aware of her pregnancy, denies that it engaged in any unlawful conduct, and denies the remaining allegations in Paragraph 23.

24. Plaintiff was employed by Defendant.

**ANSWER:** UHM admits the allegations in Paragraph 24.

25. As shown by the foregoing, Plaintiff suffered intentional discrimination at the hands of Defendant and Defendant's agents during the course of her employment with Defendant, based on her sex, in violation of the MHRA.

**ANSWER:** UHM denies the allegations in Paragraph 25.

26. Defendant failed to make good faith efforts to establish and enforce policies to prevent unlawful discrimination against its employees.

**ANSWER:** UHM denies the allegations in Paragraph 26.

27. Defendant failed to properly train or otherwise inform their supervisors and employees concerning the duties and obligations under Missouri civil rights laws, including the MHRA.

**ANSWER:** UHM denies the allegations in Paragraph 27.

28. Plaintiff's employment was terminated for reasons that constitute pretext for unlawful retaliation and/or discrimination on the basis of Plaintiff's sex.

**ANSWER:** UHM denies the allegations in Paragraph 28.

29. As a direct and proximate result of Defendant's actions and/or inaction, Plaintiff has been deprived of income and other monetary and non-monetary benefits.

**ANSWER:** UHM denies the allegations in Paragraph 29.

30. As a further direct and proximate result of Defendant's actions and/or inaction, Plaintiff has suffered humiliation, emotional pain, distress, suffering, inconvenience, mental anguish, and related compensatory damages.

**ANSWER:** UHM denies the allegations in Paragraph 30.

31. As shown by the foregoing, Defendant engaged in these discriminatory practices with malice or reckless indifference to the federally protected rights of Plaintiff. Plaintiff is

therefore entitled to an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other companies from like conduct in the future.

**ANSWER:** UHM denies the allegations in Paragraph 31.

WHEREFORE, Plaintiff prays for judgment against Defendant on Count I of her Complaint, for a finding that she has been subjected to unlawful discrimination prohibited by the MHRA; for an award of back pay, including lost fringe benefits, bonuses, costs of living increases and other benefits including interest; for an award of front pay in a reasonable amount; for an award of compensatory and punitive damages; equitable relief including reinstatement to work environment where Plaintiff is not subjected to discriminatory conduct; for her costs expended; for her reasonable attorneys' and expert's fees; and for such other and further relief the Court deems just and proper.

**ANSWER:** UHM denies that Plaintiff is entitled to judgment in her favor or any relief.

## COUNT II – VIOLATION OF TITLE VII – SEX DISCRIMINATION

32. Plaintiff hereby incorporates each preceding paragraph as though fully set forth herein.

**ANSWER:** UHM reincorporates its answers to Paragraphs 1 through 31 as if fully set forth herein.

33. Plaintiff is female. She was pregnant at the time of the termination of her employment, a condition about which Defendant and its agents were aware.

**ANSWER:** UHM admits that Plaintiff is female, that she was pregnant at the time of her termination, and that some of UHM's employees were aware of her pregnancy. UHM denies that the decision makers regarding her termination were aware of her pregnancy, denies that it engaged in any unlawful conduct, and denies the remaining allegations in Paragraph 33.

34. Plaintiff was employed by Defendant.

**ANSWER:** UHM admits the allegations in Paragraph 34.

35. As shown by the foregoing, Plaintiff suffered intentional discrimination at the hands of Defendant and Defendant's agents during the course of her employment with Defendant, based on her sex, in violation of Title VII as amended by the Pregnancy Discrimination Act.

36. Defendant failed to make good faith efforts to establish and enforce policies to prevent unlawful discrimination against its employees.

**ANSWER:** UHM denies the allegations in Paragraph 36.

37. Defendant failed to properly train or otherwise inform their supervisors and employees concerning the duties and obligations under federal civil rights laws, including Title VII.

**ANSWER:** UHM denies the allegations in Paragraph 37.

38. Plaintiff's employment was terminated for reasons that constitute pretext for unlawful retaliation and/or discrimination on the basis of Plaintiff's sex.

**ANSWER:** UHM denies the allegations in Paragraph 38.

39. As a direct and proximate result of Defendant's actions and/or inaction, Plaintiff has been deprived of income and other monetary and non-monetary benefits.

**ANSWER:** UHM denies the allegations in Paragraph 39.

40. As a further direct and proximate result of Defendant's actions and/or inaction, Plaintiff has suffered humiliation, emotional pain, distress, suffering, inconvenience, mental anguish, and related compensatory damages.

**ANSWER:** UHM denies the allegations in Paragraph 40.

41. As shown by the foregoing, Defendant engaged in these discriminatory practices with malice or reckless indifference to the federally protected rights of Plaintiff. Plaintiff is

therefore entitled to an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other companies from like conduct in the future.

**ANSWER:** UHM denies the allegations in Paragraph 41.

WHEREFORE, Plaintiff prays for judgment against Defendant on Count I of her Complaint, for a finding that she has been subjected to unlawful discrimination prohibited by Title VII; for an award of back pay, including lost fringe benefits, bonuses, costs of living increases and other benefits including interest; for an award of front pay in a reasonable amount; for an award of compensatory and punitive damages; equitable relief including reinstatement to work environment where Plaintiff is not subjected to discriminatory conduct; for her costs expended; for her reasonable attorneys' and expert's fees; and for such other and further relief the Court deems just and proper.

**ANSWER:** UHM denies that Plaintiff is entitled to judgment in her favor or any relief.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which she has a right to trial by jury.

**ANSWER:** UHM admits that Plaintiff has demanded a jury trial, but objects to a jury trial to the extent Plaintiff's claims are equitable or otherwise not properly heard by a jury.

## AFFIRMATIVE DEFENSES

1. UHM had legitimate, nondiscriminatory reasons for its actions regarding Plaintiff.

2. Subject to a reasonable opportunity for investigation and discovery, some or all of Plaintiff's claims are barred by the doctrines of waiver, laches, estoppel, and/or unclean hands.

3. Subject to a reasonable opportunity for investigation and discovery, Plaintiff's remedies are limited by the doctrine of after-acquired evidence.

4. Subject to a reasonable opportunity for investigation and discovery, Plaintiff has failed to mitigate her damages, if any.

5. Subject to a reasonable opportunity for investigation and discovery, some or all of Plaintiff's claims are barred by the applicable statute of limitations.

6. Plaintiff has no right to damages because UHM would have made the same decisions and taken the same actions absent any allegedly unlawful motivation.

7. To the extent Plaintiff seeks punitive damages, her request is barred or limited by the U.S. Constitution and the Missouri Constitution.

8. To the extent Plaintiff seeks punitive damages, her request is barred by UHM's good faith efforts to comply with all applicable laws.

9. Some or all of Plaintiff's requested relief may not be available, given the nature of her claims.

10. Subject to a reasonable opportunity for investigation and discovery, some of Plaintiff's claims fail because she has failed to exhaust his administrative remedies and/or because they are outside the scope of any administrative charge.

Dated: August 17, 2023

Respectfully submitted,

By: */s/ Paige Lohse*
One of Its Attorneys

Paige Lohse
paige.lohse@btlaw.com
BARNES & THORNBURG LLP
One North Wacker Drive, Suite 4400
Chicago, Illinois 60606
Telephone: (312) 357-1313
Facsimile: (312) 759-5646

Jason T. Clagg (Admitted *pro hac vice*)
jason.clagg@btlaw.com
BARNES & THORNBURG LLP
888 S. Harrison Street, Suite 600
Fort Wayne, IN 46802
Telephone: (260) 425-4646
Facsimile: (260) 424-8316

Douglas M. Oldham (Admitted *pro hac vice*)
douglas.oldham@btlaw.com
BARNES & THORNBURG LLP
41 S. High Street, Suite 3300
Columbus, OH 43215
Telephone: (614) 628-1422
Facsimile: (614) 628-1433

*Attorneys for Defendant Union Home Mortgage Corp.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of August 2023, a copy of the foregoing was electronically filed with the Court and served on the following counsel of record by the Court's electronic filing system:

>Lewis Galloway
>1600 Genessee Street, Suite 918
>Kansas City, MO 64102
>lewis@lglawllc.com

>*/s/ Paige Lohse*